Argued and submitted January 29, 2015, affirmed May 4, petition for review denied October 20, 2016 (360 Or 465)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JUSTIN JAMES ENGLE,**
*Defendant-Appellant.*

Jackson County Circuit Court
115573FE; A153188

373 P3d 1191

Robin A. Jones, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**EGAN, J.**

A jury found defendant guilty of a number of crimes, including assault in the second degree, ORS 163.175, which is the only conviction that defendant challenges on appeal. During defendant's trial, the state called a witness to the charged assault. The witness was unable to identify anyone in the courtroom, including defendant, as the person who had committed the assault. The state then showed the witness a photograph of defendant's face. A small portion of the collar of defendant's jail-issued shirt and sweatshirt were also visible in the photograph. The witness identified the person in the photograph as the person who committed the assault. On appeal, defendant argues that the court erred by admitting the photograph into evidence in violation of the prohibition against improperly suggestive identifications described in *State v. Lawson/James*, 352 Or 724, 291 P3d 673 (2012). The state responds that defendant did not argue below that the witness's identification of the person in the photograph was not reliable and, consequently, that issue is not preserved on appeal. Moreover, the state argues that, even if that issue was preserved, the court did not abuse its discretion when it admitted the photograph. We conclude that defendant preserved the issue of reliability; however, we agree with the state that the court did not abuse its discretion. Accordingly, we affirm.

In reviewing a trial court's admission of eyewitness identification evidence, we defer to the court's findings of fact as long as they are supported by any evidence in the record; we review the trial court's evidentiary ruling for legal error. *State v. Collins*, 256 Or App 332, 334, 334 n 3, 300 P3d 238 (2013) (applying *Lawson/James*). If a defendant seeks to exclude identification evidence on the ground that it is unfairly prejudicial, and the trial court rules otherwise, we review that ruling for abuse of discretion. *State v. Hickman*, 355 Or 715, 724, 726, 330 P3d 551 (2014).

The facts are procedural and undisputed. During its case-in-chief, the state called a witness. The witness testified that she had schizophrenia and was living in a group home at the time of the trial. However, at the time of the assault she had been living near the Budget Inn, the motel

where the assault occurred. She further testified that on the night of the assault she had been walking home when she encountered two men:

"[WITNESS]: I was at the—I had never met them before. I was at the little market walking home and there was two guys on foot, I guess it was Justin and his friend, I don't know his name. I probably couldn't tell you what they look like now.

"[PROSECUTOR]: So you just said the name Justin.[1] Do you recall—

"[WITNESS]: That's the name that was given to me a week ago or a couple weeks ago.

"[PROSECUTOR]: But when you met these two males do you remember what they said their names were?

"[WITNESS]: No. I don't even remember.

"[PROSECUTOR]: Okay. All right, go ahead.

"[WITNESS]: And they asked me if I wanted to go to the Budget Inn. I just thought they were on foot and I'm like, 'Yeah, but I've got to go to my apartment.' So, we went there and one of the guys went into the bathroom and the guy named Justin was with me, we were just talking.

"[PROSECUTOR]: So, what's this guy named Justin, who are you referring to?

"[WITNESS]: Well, I think it's the guy—I think it's the guy that had hit the—

"[PROSECUTOR]: Well, let me ask you, do you—

"[WITNESS]: I don't know.

"[PROSECUTOR]: —do you recognize anybody in the courtroom today when you saw—

"[WITNESS]: No.

"[PROSECUTOR]: Okay. Let me show you a photo. Does this person look familiar to you?

"[WITNESS]: Yeah. That's the guy. I think that's Justin.

"[PROSECUTOR]: Okay.

---

[1] Defendant's first name is Justin.

"[WITNESS]: Is that—?

"[PROSECUTOR]: So—

"[WITNESS]: That's the guy.

"[PROSECUTOR]: Hold on just one second, [witness].

"[WITNESS]: I'm sorry.

"[PROSECUTOR]: I am marking what you just looked at as State's Exhibit No. 43.

"[DEFENSE COUNSEL]: We object, Your Honor. Not proper foundation in regards to this."

The court excused the jury, and defendant argued that the photograph should not be admitted into evidence:

"[DEFENSE COUNSEL]: Your Honor, we're objecting to that photograph being entered into evidence based on a number of reasons. One, *** [the witness] has already stated that she did not know the people, that she didn't recognize the person, that *the only time that she'd ever heard of that person was when she had been directed by somebody, and we're not sure who, about a week ago as far as the person's name.* So she didn't—

"THE COURT: Well, she didn't quite say it that way but I understand what you're saying.

"[DEFENSE COUNSEL]: *** [S]*he already has stated that she didn't see that person here today and she already looked around the—you know, around the room and stated that.* So, she didn't take the picture. *The photograph obviously is, well, somebody in jail clothing*[2] and she doesn't have the memory—it's a lack of memory also, Your Honor, and she's got the lack of memory that she doesn't recall exactly what occurred on that date let alone what the people looked like or what happened."

(Emphases added.)

The court permitted defendant to ask questions in aid of objection outside the presence of the jury:

---

[2] The photograph is cropped similarly to a driver's license or passport photograph. Defendant's face is centered. His neck and a small portion of his chest are visible. Defendant is wearing a grey sweatshirt over a forest green shirt. There is no marking or writing on defendant's clothing visible in the photograph.

"[DEFENSE COUNSEL]: Do you remember what happened that day?

"[THE WITNESS]: Yeah.

"[DEFENSE COUNSEL]: Okay.

"[THE WITNESS]: The reason why I'm here, yeah.

"[DEFENSE COUNSEL]: Okay. Have you been—have you talked to people about what happened that day, what you remember from that day?

"[WITNESS]: A little bit in Heinz with my caseworker.

"[DEFENSE COUNSEL]: Okay. So you talked to your caseworker about this?

"[WITNESS]: A little bit, yeah.

"[DEFENSE COUNSEL]: And is that where you got the name from?

"[WITNESS]: Yeah. Yeah.

"[DEFENSE COUNSEL]: Okay. And do you remember talking to Detective Ivens on the phone?

"[WITNESS]: No, but my caseworker did.

"[DEFENSE COUNSEL]: Okay. You don't remember a phone call with Detective Ivens?

"[WITNESS]: Oh, the female?

"[DEFENSE COUNSEL]: Mmm-hmm.

"[WITNESS]: Yeah, I remember.

"[DEFENSE COUNSEL]: Okay.

"[WITNESS]: And I told her everything that I remembered.

"[DEFENSE COUNSEL]: Okay.

"[WITNESS]: Yeah.

"[DEFENSE COUNSEL]: At that time you didn't recall any names, right?

"[WITNESS]: No. I didn't recall any names.

"[DEFENSE COUNSEL]:   Okay. And at that time you didn't recall what these people looked like? That's what you stated to Detective Ivens?

"[WITNESS]:   That's true. That's true."

The court questioned the witness and ruled on the objection:

"THE COURT:   Do you know if your identification of this person as a person you saw on that date—

"[WITNESS]:   Yeah.

"THE COURT:   —is that based on what you recall or is it somehow—do you recognize him sitting at counsel table where you didn't before?

"[WITNESS]:   Well, I—yeah, I didn't—I didn't—I didn't before. I—I—when I was trying to think back I couldn't recall their faces, the two guys that were there.

"THE COURT:   Are you talking about your phone call with Detective Ivens or are you talking about this—just a moment ago?

"[WITNESS]:   Even before I came in here I wouldn't have been able to recognize the faces.

"THE COURT:   So what makes you able to recognize them now?

"[WITNESS]:   *Because I remember.*

"THE COURT:   It does go to weight. I'm going to allow it. And I don't think this is particularly identifying him as being in custody clothes, but yes I think there are substantial issues for cross-examination there."

(Emphasis added.)

On cross examination, defendant elicited from the witness that, aside from having schizophrenia, the witness was using methamphetamines when she observed the charged assault. Defendant also elicited inconsistent statements regarding how well the witness recalled what the perpetrator looked like. In closing, defendant argued that the witness was "easily confused" and "easily susceptible to questioning" and that her identification was tainted by her conversations with her caseworker.

We begin our analysis with a brief overview of the relevant case law as it touches upon the issue of preservation. In *Lawson/James*, issued 13 days after the judgment was entered in this case, the Oregon Supreme Court revised the earlier test for the admissibility of a suggestive identification, which was first formulated in *State v. Classen*, 285 Or 221, 590 P2d 1198 (1979). After noting that the test articulated in *Classen* was "somewhat at odds with * * * current Oregon evidence law," the *Lawson/James* court revised the test "based on the generally applicable provisions of the OEC." *Lawson/James*, 352 Or at 746-50. Specifically, the *Lawson/James* court rooted the revised test in OEC 602, which requires personal knowledge; OEC 701, which describes the conditions for admissible lay opinion testimony; and OEC 403, which provides a basis for excluding otherwise relevant evidence. *Id.* at 752-59.

The state argues that defendant failed to preserve the issue of the reliability of the witness's identification of the photograph because defendant's argument to the trial court focused on the foundational issues involved in the analysis of a potentially suggestive identification—issues that the *Lawson/James* court would link to OEC 602 and OEC 701. 352 Or at 752-56. The state further argues that defendant's "objections did not identify OEC 403 or contest reliability or probative value."

We disagree with the state's assertion that defendant did not challenge the reliability and probative value of the witness's identification. As noted, the operative test for a suggestive identification at the time of the court's ruling was the *Classen* test. Defendant asserts, and the state does not disagree, that the trial court understood defendant to be raising the issue of suggestive identification under the *Classen* test. Indeed, we agree that defendant's questions in aid of his objection and the court's colloquy with the witness demonstrate that defendant and the court understood the relevant inquiry to be "whether an identification made in a suggestive procedure has nevertheless been demonstrated to be reliable despite that suggestiveness." *Classen*, 285 Or at 233. That understanding is sufficient to preserve the issue of reliability for appeal. *Cf. State v. Johanesen*, 319 Or

128, 138, 873 P2d 1065 (1994) (holding that the *Classen* test is sufficiently similar to the test under OEC 403 such that a court performing the *Classen* test in lieu of an OEC 403 test does not err).

We turn to the parties' arguments on the merits. Defendant argues that two aspects of the identification in this case demonstrate that the court erred in admitting the photograph. First, defendant notes that police and the witness's caseworker told the witness defendant's name before trial and that the prosecutor implicitly approved of the witness's use of defendant's name during questioning. Second, defendant notes that the prosecutor showed the witness a photograph of defendant in which he was wearing jail-issued clothing and argues that that fact renders the photograph inadmissible.[3] The state responds by analogizing this case to *Hickman*, decided while this appeal was pending. In that case, the Supreme Court applied the *Lawson/James* analysis in the context of suggestive in-court identifications.

In *Hickman*, the defendant argued that the trial court erred under *Lawson/James* when it admitted testimony of two witnesses. Both witnesses identified the defendant as

---

[3] Defendant advances other arguments, which we reject without extended discussion. First, he argues that the court erred in admitting the photograph because "[t]he context of the trial court's ruling *** demonstrates that it based its ruling primarily on [the witness's] confirmatory statements," a method frowned upon in *Lawson/James*, 352 Or at 759. Specifically, defendant points to the final question asked of the witness by the court, "So what makes you able to recognize [the photograph and defendant] now?" The witness responded, "Because I remember." The witness's response is not a confirmatory statement as discussed in *Lawson/James* and, consequently, we reject that argument.

Second, defendant argues that under *Lawson/James* "the reliability of eyewitness identifications is determined with reference to system and estimator variables" and that, in this case, both the system and estimator variables demonstrate that the witness's identification was tainted. We reject that argument because defendant's formulation of the test is inaccurate under *Hickman*, 355 Or at 736-40 (discussing the use of system and estimator variables as a "general interpretive overlay" disfavorably; distinguishing suggestive in-court identifications from suggestive out-of-court identifications; and stating that the *Lawson/James* analysis, which references system and estimator variables, applies strictly to the latter).

Finally, to the extent that defendant's brief could be read to also argue that the trial court erred in admitting the photograph because the state failed to establish that the witness had personal knowledge, we note that the witness testified that her identification was based on her memory. That testimony is sufficient to satisfy the conditional relevancy requirement of OEC 602.

the perpetrator of the crime from the witness stand. Neither witness had taken part in an out-of-court identification procedure and, consequently, neither had identified anyone as the perpetrator before doing so in court. *Hickman*, 355 Or at 720-22. The court ultimately concluded that one identification, made by witness N, was admissible. The court did not reach the other identification, made by witness D, because it concluded that, even if the trial court had erred with respect to D's identification, such error was harmless. *Id.* at 748.

With regard to N's identification, the Supreme Court noted that did it not involve suggestiveness beyond that inherent in a normal courtroom setting and that N's pretrial description of the perpetrator put defendant on notice that N might be asked to make an in-court identification. *Id.* at 742-43. The Supreme Court also noted that N's entire identification occurred in the presence of the jury. Such procedure allows the factfinder the opportunity "to evaluate the reliability of the identification because he or she can observe the witness's demeanor and hear the witness's statements *during* the identification process." *Id.* at 735 (emphasis added).

The court found D's identification "more troubling" and discussed four aspects in detail. *Id.* at 748. First, D had told authorities that the shooter was an African-American man. When prepping D for her testimony, the prosecutor told her that, if she recognized the shooter in the courtroom when she was testifying, she should signal him with a "'look in the eye.'" *Id.* at 719. The court concluded that the prosecutor's plan amounted to a substantial suggestion that the defendant was the perpetrator because it suggested that the perpetrator would be present in the courtroom and because defendant was, in fact, the only African-American in the well of the courtroom and seated at counsel table. *Id.* at 719, 748. Second, shortly after D's testimony began, an equipment malfunction occurred, the court recessed, the jurors left the courtroom, and court staff cleared the public. *Id.* at 720. D walked past defendant, who remained in the courtroom with defense counsel. In the hallway, D began hyperventilating and stated to the prosecutor, "'Oh, my God, that's him, that's him, that's him.'" *Id.* at 720. The court noted that, as a result, "[t]he jury was not present when D's

initial identification of defendant and her ensuing emotional response occurred, and, therefore, it was unable to evaluate the significance of those events." *Id.* at 747. Third, after the court staff had fixed the equipment malfunction and D returned to the stand, she gave a detailed description of the perpetrator for the first time. The court noted, "That sudden 'improvement' in D's recollection of detail—in light of the other described circumstances—permitted an inference that her in-court identification of defendant may have been influenced by the suggestiveness of the courtroom setting." *Id.* Fourth, the court expressed concern that when, as was the case with D's identification, the defendant has no reason to expect that a witness would be able to make an in-court identification, "defense counsel had little reason to make a precautionary request for pretrial or in-trial steps to test D's recollection with a fairly constructed and administered identification procedure." *Id.*

Relying on *Hickman*, the state argues that the trial court here did not err in admitting the photograph because the entire identification process occurred in the presence of the jury. Moreover, the state points out that the witness testified about her own uncertainty, stating, for example, that she "probably couldn't tell [the prosecutor] what [the perpetrators] look like now." In turn, the state argues that the jury was able to assess the reliability of the identification. Last, the state argues that the witness "displayed no sudden improvement in memory."

We agree with the state's first two points, which amount to the observation that the jury saw the whole of the witness's identification, including its readily apparent weaknesses. The state is wrong, however, when it asserts that the witness "displayed no sudden improvement in memory." At the beginning of her testimony, the witness stated, "I probably couldn't tell you what [the perpetrators] look like now." When asked if she recognized anyone in the courtroom, she replied, "No." Yet, moments later, when the prosecutor showed the witness the photograph, the witness identified the person in the photograph as the perpetrator. When asked by the court how she was able to make that identification, the witness stated, "Because I remember."

Like the Supreme Court in *Hickman*, we are troubled by the witness's sudden "improvement" in memory. However, we conclude that the trial court did not abuse its discretion when it admitted the photograph. Once the proponent of the evidence has produced evidence sufficient for the factfinder to find that the witness has personal knowledge and that the identification is rationally based in the witness's perception, and the court has determined that the identification is helpful to the factfinder, the decision whether to exclude an identification as unfairly prejudicial is committed to the discretion of the trial court. *Hickman*, 355 Or at 726. As noted, defendant argues that the court erred in admitting the photograph because the witness's caseworker had supplied the witness with the name Justin and the photograph shows defendant wearing jail-issued clothing. Here, the court reasoned that the clothing that defendant wore in the photograph was "not particularly identifying" and that defendant's cross-examination could adequately address issues raised by the witness's testimony identifying the person in the photograph as the perpetrator—testimony that included the witness's admission that her caseworker had given her the name Justin. The court did not abuse its discretion in so reasoning. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (stating that a trial court abuses its discretion if it makes a decision that is not within the range of legally permissible outcomes).

Affirmed.