ORTEGA, P. J.
*349 Defendant seeks reversal of his conviction for reckless driving, ORS 811.140, challenging the trial court's denial of his motion to suppress a witness's out-of-court identification *820 and any in-court identification of defendant. He argues that the court should have excluded the identification evidence because it did not meet the foundational threshold for admissibility under OEC 602 and OEC 701, as it was unreliable and the conditions under which the police officers administered a "showup" were inherently suggestive. Further, he argues that, even if the identification evidence did meet that threshold requirement, it should have been excluded under OEC 403 as unduly prejudicial. We conclude that the trial court did not err in admitting the out-of-court identification and permitting the in-court identification, and therefore we affirm.
"In reviewing a trial court's admission of eyewitness identification evidence, we defer to the court's findings of fact as long as they are supported by any evidence in the record; we review the trial court's evidentiary ruling for legal error." State v. Engle , 278 Or. App. 54, 55, 373 P.3d 1191, rev. den. , 360 Or. 465, 384 P.3d 154 (2016). However, when a defendant challenges the admissibility of the identification evidence on OEC 403 grounds, we review the court's decision to admit the evidence for abuse of discretion. State v. Lawson/James , 352 Or. 724, 762, 291 P.3d 673 (2012).
Smith spotted a white Cadillac driving erratically and watched as it almost caused an accident. She followed the Cadillac into a Safeway parking lot and watched the driver and one other person get out of the car. The driver walked up to Smith's car and asked, "How's that working for you?" After the driver and the passenger entered the Safeway, Smith called the police and described the driver as a tall and heavy-set male with a beard or a mustache, who was accompanied by "a heavy-set girl, in a pink shirt." Officers Farr and Hays were dispatched to the parking lot and, when they arrived, they questioned Smith about the incident. She told them what had happened, described the driver and the passenger, and then left to go to the police station.
*350 Farr and Hays remained in the parking lot and, when defendant and a child, both of whom matched Smith's descriptions, left the Safeway, Farr stopped them to ask about defendant's involvement in the incident. Farr contacted the police station and asked Smith to return to the scene to identify the person driving the Cadillac. When Smith arrived, she identified defendant as the driver. At the time of the identification, defendant was not handcuffed and was not in the back of the police car; he was standing next to Hays about 25 yards away from where Smith was parked with Farr. Smith did not want to get close to defendant because she was "skittish" about him seeing her. She then left, and defendant was arrested and charged with reckless driving (Count 1) and recklessly endangering another person (Count 2).
Before his trial, defendant filed a motion to suppress Smith's out-of-court identification and to prevent any in-court identification, invoking Lawson/James , 352 Or. at 724, 291 P.3d 673. Before discussing defendant's specific challenges to the identification evidence, we pause to briefly revisit the evidentiary concepts in that decision.
In Lawson/James , the Supreme Court established a two-step process for determining the admissibility of an eyewitness's identification when faced with an argument that the identification was tainted by suggestive police procedures. First, "when a criminal defendant files a pre-trial motion to exclude eyewitness identification evidence, the state as the proponent of the eyewitness identification must establish all preliminary facts necessary to establish admissibility" under the applicable provisions of the Oregon Evidence Code. Lawson/James , 352 Or. at 761, 291 P.3d 673. That is, when a defendant's challenge implicates OEC 602 and OEC 701, the burden is on the state to prove that the witness had "the personal knowledge necessary to make an identification, OEC 602, and the identification must be rationally based on that knowledge and be helpful to the jury. OEC 701." Hickman , 355 Or. at 728, 330 P.3d 551. Second, if the state meets its burden under the first step-i.e. , once the state establishes that minimum baseline of reliability-the burden then shifts to defendant *351 to prove that, "under OEC 403 ***, although the eyewitness evidence is otherwise admissible, the probative value is substantially outweighed by the danger of unfair prejudice ***." Lawson/James , 352 Or. at 740, 291 P.3d 673. *821 The state "satisfies OEC 602 if the eyewitness testifies to facts that, if believed, would permit a reasonable juror to find that the eyewitness observed the facts necessary to make the identification." State v. Hickman , 355 Or. 715, 729-30, 330 P.3d 551 (2014), cert. den. , --- U.S. ----, 136 S.Ct. 230, 193 L.Ed.2d 173 (2015). To satisfy OEC 701, the state "must demonstrate by a preponderance of the evidence that the witness perceived sufficient facts to support an inference of identification and that the identification was, in fact, based on those perceptions." Lawson/James , 352 Or. at 754-55, 291 P.3d 673. We consider estimator and system variables to decide the issue implicating OEC 701, but only apply estimator variables to the OEC 602 issue. Hickman , 355 Or. at 724, 330 P.3d 551. Estimator variables "generally refer to characteristics of the witness, the alleged perpetrator, and the environmental conditions of the event that cannot be manipulated or adjusted by state actors." Lawson/James , 352 Or. at 740, 291 P.3d 673. In contrast, system variables concern the "circumstances surrounding the identification procedure itself that are generally within the control of those administering the procedure." Id.
In a hearing to address defendant's motion, the court noted that there was insufficient evidence that Smith was able to identify the driver of the Cadillac before stopping in the Safeway parking lot. Nevertheless, the court concluded that the state had satisfied the minimum baseline of reliability of Smith's identification, because it "was based [on her] firsthand perceptions and would be helpful to the trier of fact" because of
"how she observed [defendant], observed the vehicle, saw him get out of the vehicle, he approached her, [and] he spoke to her."
In concluding that the probative value of the identification outweighed the risk of undue prejudice, the court concluded that, although the showup was suggestive, "it [was] not so unduly suggestive that it *** [made] it necessary to suppress the eyewitness identification." The trial court then stated that the
*352 "circumstances under which eyewitness identifications can occur vary so widely. ***
"This was an extremely recent observation of a defendant who was somewhat distinctive physically. *** [Defendant was] the tallest man in the room. *** [H]e was accompanied *** by an observable, describable, in at least one or two ways distinctive, companion. She didn't just see him to identify him, *** [she first perceived him] close up.
"And, therefore, [the court] determin[ed] that the showup itself was not so unduly suggestive as to undermine so completely the reliability of the eyewitness testimony as to require [it] to exclude [the evidence]."
The court denied defendant's motion, and the case proceeded to a jury trial at which Smith also identified defendant in court. Defendant was convicted on Count 1 for reckless driving.
On appeal, defendant renews his arguments from below, first focusing on the "estimator variables" to demonstrate that Smith lacked personal knowledge under OEC 602 to identify defendant as the driver. He asserts that Smith's observation of him at the time of the identification occurred while she was under stress, distracted, and "skittish." He also argues that Smith could not identify him as the driver because he lacked distinctive physical characteristics. Defendant further contends that, even if Smith had personal knowledge, the identification evidence should have been excluded because the identification did not meet the OEC 701 standard. Relying on the system variables, defendant asserts that the showup was inherently suggestive because it was not blindly administered, Farr did not give pre-identification instructions to Smith, and it was impossible for Smith to get a good view of defendant because she was far away, which made it less likely that her identification was rationally based on her perception and would be helpful for the jury.
Alternatively, defendant argues that the identification should have been suppressed because it was unduly prejudicial. According to defendant, Farr used an unreliable identification procedure that offered "little probative value."
*353 In response, the state asserts that the trial court correctly concluded that the requirements of OEC 602 were satisfied because Smith had several opportunities to observe *822 defendant and, because she was paying attention to his distinctive features, she had personal knowledge to identify defendant as the driver. As to the OEC 701 inquiry, the state contends that Smith's observations demonstrated that her identification was based on firsthand perceptions as opposed to the showup, because she saw defendant close up when he got out of the Cadillac and even spoke to him when he approached her car, and that the identification was helpful to the jury. Further, the state argues that the court correctly concluded that the evidence was not unduly prejudicial to defendant under OEC 403. Relying on both types of variables, the state asserts that the probative value outweighed any prejudice because the identification occurred within 30 minutes of Smith's original report to police, and because she had multiple occasions to observe defendant while she was not under stress-which allowed her to give an accurate description of defendant-the court did not err in admitting the evidence.
In reviewing defendant's OEC 602 challenge, we consider the estimator variables articulated in Lawson/James . The estimator variables include:
"(1) the witness's level of stress; (2) the witness's focus and attention; (3) the duration of exposure to an alleged perpetrator; (4) environmental viewing conditions; (5) the witness's physical and mental characteristics and condition; (6) the witness's description of the perpetrator; (7) the perpetrator's characteristics; (8) the speed of the identification; (9) the witness's confidence or certainty (noted as not reliably indicative of accuracy); and (10) memory decay."
State v. Haugen , 274 Or. App. 127, 141, 360 P.3d 560 (2015), rev'd on other grounds , 361 Or. 284, 392 P.3d 306 (2017) (citing Lawson/James , 352 Or. at 744-46, 291 P.3d 673 ).
In reviewing defendant's OEC 701 challenge, we consider both estimator variables and system variables, which include:
"(1) whether the identification procedure was conducted by a person who was unaware of the suspect's identity;
*354 (2) whether pre-identification instructions were given to reduce the likelihood of misidentification; (3) the manner in which the photographic lineup was constructed and presented to the witness; (4) whether multiple viewings of the suspect could have led to source confusion; (5) whether suggestive wording or leading questions by investigators could have contaminated the witness's memory; and (6) whether confirming feedback could have falsely inflated the witness's confidence in the accuracy of his or her identification."
Id . (citing Lawson/James , 352 Or. at 741-44, 291 P.3d 673 ).
As to the OEC 602 challenge, we conclude that the state satisfied its burden in proving that Smith "observed the facts necessary to make [an] identification." See Hickman , 355 Or. at 725, 330 P.3d 551. Smith had opportunities to observe defendant and his passenger in the Safeway parking lot, where she saw them get out of the Cadillac and then approach her and ask her a question. Those observations occurred soon after seeing the Cadillac on the highway and, because those observations were up close, Smith had the chance to observe defendant's features. Based on that evidence, a rational juror could find that Smith had sufficient personal knowledge to identify defendant as the driver of the Cadillac. See Lawson/James , 352 Or. at 766, 291 P.3d 673 (concluding that, "[a]lthough some estimator variables could have negatively affected the witnesses' perceptions, others indicate that the witnesses' observations were reliable"; explaining that the personal knowledge requirement is met when the "witnesses were face-to-face with the perpetrators and had clear opportunities to observe their features").
As for the OEC 701 inquiry, we conclude that the state met its burden of showing that Smith's identification was rationally based on her perception apart from the showup. The trial court acknowledged, as the court did in Lawson/James , that showups are suggestive. 352 Or. at 742-43, 291 P.3d 673. However, we conclude that the record supports the trial court's finding that a preponderance of the evidence allowed a reasonable juror to find that Smith observed the facts necessary to make the identification and that the identification was, in fact, based on those perceptions. In addition, the identification *823 was helpful to the jury in determining "that defendant was the perpetrator." Id. at 756, 291 P.3d 673. *355 We also reject defendant's assertion that he met the requirements under OEC 403 -that is, we conclude that the trial court did not err in determining that he failed to prove that the probative value of Smith's identification was substantially outweighed by the danger of unfair prejudice. When an eyewitness has been exposed to suggestive police procedures, the trial court has a "heightened role as an evidentiary gatekeeper," id . at 734, 291 P.3d 673, and estimator and system variables are considered in that analysis. Hickman , 355 Or. at 730-32, 330 P.3d 551.
Here, the showup was inherently suggestive, in that defendant was the only one present with Hayes at the time that Smith made the identification. At the same time, as the court noted, defendant was neither handcuffed nor in the back of a police car, and the showup was not so inherently suggestive that the resulting prejudice substantially outweighed the probative value of the identification. As the trial court properly noted, Smith's identification came after "an extremely recent observation" of defendant who is "somewhat distinctive physically." It also concluded that Smith did not first see defendant at a distance, but instead perceived him up close, and that any problems with the showup did not "undermine so completely the reliability" of Smith's observation that the identification evidence should be excluded. In that circumstance, the trial court did not abuse its discretion in declining to suppress the identification evidence.
Furthermore, defendant offers no additional independent basis or argument for exclusion of the in-court identification, and we conclude that the court did not err in admitting that evidence.
Affirmed.