No. 65     February 4, 2026     839

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTONIO RODRIQUEZ III,
aka Antonio Rodriguez, aka Antonio Rodriguez III,
aka Antonio Rodriquez III, aka Antonio Rodriquez,
*Defendant-Appellant.*

Klamath County Circuit Court
22CR41797, 21CR57482, 20CR56441, 20CR55729;
A181595 (Control), A181596, A181597, A181598

Alycia E. Kersey, Judge.

Argued and submitted December 19, 2025.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the opening and reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission. Antonio Rodriguez III filed the supplemental brief *pro se*.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

In this consolidated criminal appeal, defendant challenges a judgment of conviction and three judgments revoking his probation. A witness identified defendant as the person who pointed a gun at her and others at a carwash. The person with the gun got into a minivan, which drove away, and the witness provided the van's license plate number to police, who located the van a short time later outside a busy restaurant about a mile away from the carwash. Defendant was a passenger in the van and the driver did not consent to a search of the van. The police seized the van, obtained and executed a search warrant within about four hours, and found a gun inside. After a jury trial, the jury found defendant guilty of one count of felon in possession of a firearm (FIP) (Count 1); four counts of unlawful use of a weapon with a firearm (Counts 2, 4, 6, and 8); and three counts of menacing (Counts 3, 5, and 7). The trial court revoked probation in each of defendant's three probation cases and sentenced defendant to a total term of 150 months in prison.

On appeal, defendant raises five counseled assignments of error and one *pro se* assignment. First, he argues that the trial court erred when it denied his motion to suppress because, according to defendant, police did not obtain a warrant to search the seized vehicle within a reasonable amount of time. In his second through fourth assignments, defendant argues that the trial court should have suppressed evidence of the out-of-court identification of defendant and excluded evidence of two in-court identifications. In his fifth assignment, defendant argues that the crime of FIP is unconstitutional under the Second Amendment to the United States Constitution. In his *pro se* assignment of error, defendant argues that there were deficiencies in the warrant obtained to search the vehicle. As explained below, we affirm.

*No Unreasonable Delay in Obtaining a Search Warrant.* We review the denial of a motion to suppress for legal error, deferring to the trial court's findings of historical fact if there is constitutionally sufficient evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). We "assume that the trial court decided historical facts necessary to its legal

conclusions in a manner consistent with those conclusions." *State v. Reyes-Herrera*, 369 Or 54, 61, 500 P3d 1 (2021).

Article I, section 9, of the Oregon Constitution protects against unreasonable searches and seizures. "Under Article I, section 9, searches and seizures must be conducted pursuant to a warrant or one of the few *** exceptions to the warrant requirement." *State v. McCarthy*, 369 Or 129, 131, 501 P3d 478 (2021). Under the "exigent circumstances" exception, "police may conduct a warrantless seizure or search if they have probable cause and exigent circumstances exist. Exigent circumstances are circumstances where prompt responsive action by police officers is demanded." *Id.* at 142 (citations and internal quotation marks omitted).

"To prove that such an exigency existed, the state must prove that it could not obtain a warrant through reasonable steps, which include utilizing available processes for electronic warrants. Officers cannot create exigent circumstances by their own inaction." *Id.* at 177 (brackets and internal quotation marks omitted). Even if an initial seizure satisfies the exception, "[t]he duration of a warrant exception also may be limited." *State v. Thompson*, 370 Or 273, 282, 518 P3d 923 (2022). "[T]he police may not create or prolong exigent circumstances by their own inaction or for their own convenience." *Id.* For example, in *Thompson*, the court concluded that "the circumstances that justified the initial seizure of [the] defendant's cellphone did not justify police in keeping it for five days." *Id.* at 285.

On appeal, defendant does not challenge the initial decision to seize the minivan. Instead, he argues that the trial court erred when it denied his motion to suppress because "police unlawfully extended the warrantless seizure of the vehicle." After police seized the van in which defendant was a passenger, it took them somewhere between four and five hours to obtain a search warrant, execute it, and notify the van's owner that it could be returned to her.[1] Defendant argues that the police could have obtained a telephonic

---

[1] Defendant was arrested at 7:52 p.m., the police towed the van, and a detective returned to the department to begin writing the search warrant a couple of minutes later. A judge signed the warrant three hours later at 10:50 p.m. After that, it took about another hour for the detective to read the warrant to defendant and search the van pursuant to the warrant, in which he found a loaded pistol.

warrant in about 15 minutes. The trial court rejected that argument noting that there was "a big difference" between telephonic warrants and the kind of search warrant that was necessary here.

The evidence supports the trial court's ruling, and it did not err in denying the motion to suppress. At the hearing, there was testimony that the police department used telephonic warrants only in cases where the person is suspected of driving under the influence of intoxicants (DUII). That process involves contacting a judge with an affidavit and search warrant in "a template form," and the officer is essentially "checking boxes" on the form when reading it to a judge over the phone. A sergeant explained that obtaining a warrant in a DUII case is relatively straightforward because the officer typically is required to do no more than describe the suspect's driving and physical condition.

However, in other kinds of criminal investigations, drafting a probable cause affidavit is more complicated because it may involve describing the incident, explaining what the officer learned from victims, and explaining how the police obtained information giving rise to the need for a search warrant. The sergeant testified that he had "written hundreds of search warrants and they take anywhere from three to five hours." That evidence supports the trial court's determination that the circumstances of this case were too complicated to rely on a telephonic warrant and "that the delay here was reasonable under the circumstances," in a case in which the police were investigating whether defendant had pointed a gun at a group of people at a carwash and whether the gun was in the van that the police had stopped outside a nearby restaurant shortly afterwards.

In arguing that the time it took the police to obtain the warrant was unreasonable, defendant cites *Thompson*, 370 Or at 283-84, but *Thompson* is inapposite, because, in that case, the police officer seized the defendant's cellphone and then waited for five days before obtaining a warrant to search it. Indeed, in *Thompson*, an officer testified that he could have obtained a warrant to search the cellphone in

---

About 30 minutes later, the police contacted the van's owner to let her know she could pick it up.

"six to 10 hours." *Id.* at 277. Here, as noted above, a judge signed the warrant to search the minivan just over three hours after defendant was arrested, the van was searched about an hour later, and the minivan's owner was notified that she could pick it up about 30 minutes after the van was searched. The trial court did not err in rejecting defendant's argument that it took an unreasonable amount of time to obtain and execute the search warrant.

 *Eyewitness Identification Evidence.* Defendant also moved to suppress evidence of a witness's identification of defendant shortly after he pointed a gun at her and others at the carwash. At the hearing, defendant argued that the eyewitness identification evidence was unduly suggestive because a police officer relied on a single DMV photo of defendant,[2] and the officer told the witness, "'We think we've got the guy.'" In addition, the witness described the DMV photo of defendant as a "mugshot."

 In ruling on the motion to suppress, the trial court determined that the state met its burden under OEC 602 and 701 because the witness was "really close to him, it was about two feet," and "it was within minutes that she got to see the photo." The trial court noted that the duration of the exposure was long enough to get a good look at defendant, she saw him "in the light of day," and her description of tattoos also matched defendant. The trial court acknowledged that there was "some unfair prejudice" because the police showed the witness only a single photo, and it was "suggestive" to say, "'We think we got him.'" Nevertheless, the court ruled that the unfair prejudice did not substantially outweigh the probative value of the identification evidence. Therefore, the trial court denied the motion to suppress, and, during defendant's trial, two witnesses made in-court identifications of defendant as the person who was at the carwash and who pointed a gun at them.

 On appeal, defendant renews his argument that the trial court should have granted the motion to suppress and excluded the eyewitness identification evidence. "In

---

[2] At the hearing, the officer explained that he could not go back to the police station to assemble a photo array because he was "securing the scene," and there was no one at the station because "all units" were "out looking for the vehicle."

reviewing a trial court's admission of eyewitness identification evidence, we defer to the court's findings of fact as long as they are supported by any evidence in the record; we review the trial court's evidentiary ruling for legal error." *State v. Harrell*, 292 Or App 348, 349, 424 P3d 817 (2018) (internal quotation marks omitted). When a defendant challenges the admissibility of identification evidence on OEC 403 grounds, we review the court's decision to admit the evidence for abuse of discretion. *State v. Lawson/James*, 352 Or 724, 762, 291 P3d 673 (2012).

In *Lawson/James*, the Supreme Court established a two-step framework for determining the admissibility of eyewitness identification evidence. *Id.* at 761-62. First, the state has the burden to prove that the witness had "'the personal knowledge necessary to make an identification, OEC 602, and the identification must be rationally based on that knowledge and be helpful to the jury. OEC 701.'" *Harrell*, 292 Or App at 350 (quoting *State v. Hickman*, 355 Or 715, 728, 330 P3d 551 (2014), *adh'd to as modified on recons*, 356 Or 687, 343 P3d 634, *cert den*, 577 US 896 (2015)). We apply estimator variables to decide the issue under OEC 602, and we apply both estimator and system variables to decide the OEC 701 issue. *Hickman*, 355 Or at 724-25. Estimator variables "generally refer to characteristics of the witness, the alleged perpetrator, and the environmental conditions of the event that cannot be manipulated or adjusted by state actors." *Lawson/James*, 352 Or at 740. System variables concern the "circumstances surrounding the identification procedure itself that are generally within the control of those administering the procedure." *Id.* Second, if the state meets its burden under OEC 602 and 701, the burden shifts to the defendant to prove, under OEC 403, that the probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 762.

Here, the trial court did not err in denying the motion to suppress. At the hearing, the witness testified that, at the carwash, she was standing only about two feet away from defendant and could clearly see his face. Defendant showed the witness and others "a tattoo on his stomach," he mentioned "a gang affiliation," and then "he pulled the gun out of his pocket[.]" Although the witness was stressed

and scared when defendant pulled out a gun, she testified that she was trying to remember descriptions of defendant so that she could provide them to the police, and she also provided the van's license plate number to police. The witness was very close to defendant, and he had her "undivided attention." Police showed her the photo only about five or 10 minutes after she called the police. The witness did not believe that being told "they got the guy" impacted her ability to identify defendant. In addition, the witness testified that defendant looked the same on the day of the hearing as he did on the day of the incident.

Based on that evidence, the state satisfied its burden under OEC 602 to prove that the witness observed facts necessary to make an identification, and, under OEC 701, that her identification was rationally based on her perceptions and that it would be helpful to the jury. The witness was very close to defendant, she had an unobstructed view of him during the daytime, and she did not waiver in her conviction that she had made a correct identification.

Turning to the second step of the *Lawson/James* framework, the police procedures may have caused some unfair prejudice to defendant as reflected in the witness's description of the DMV photo as a "mugshot" and as "possibly an old photo." Nevertheless, given the witness's detailed testimony regarding her personal observations of defendant, the trial court acted within its discretion under OEC 403 in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. The trial court did not err in denying the motion to suppress and in admitting the eyewitness identification evidence at trial.

*Remaining Assignments of Error.* In his fifth assignment of error, defendant argues that the crime of FIP is unconstitutional under the Second Amendment. For the reasons explained in *State v. Parras*, 326 Or App 246, 531 P3d 711 (2023), *rev dismissed as improvidently allowed*, unpublished order in case number S070409 (Mar 4, 2025), and *City of Portland v. Sottile*, 336 Or App 741, 561 P3d 1159 (2024), *rev den*, 374 Or 372 (2025), we reject that argument.

In his *pro se* supplemental brief, defendant argues that there was no evidence that a judge signed the search warrant. Although the judge's signature is somewhat faded, it is clear the search warrant was signed on August 27, 2022, and a detective testified that the judge signed it at 10:50 p.m. We therefore reject the *pro se* assignment of error.

Affirmed.