No. 892          December 11, 2024          741

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CITY OF PORTLAND,
*Plaintiff-Respondent,*

*v.*

JOSHUA A. SOTTILE,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR60621; A178514

Angela F. Lucero, Judge.

Argued and submitted October 10, 2024.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Denis Vannier argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In *State v. Christian*, 354 Or 22, 29, 307 P3d 429 (2013), the Oregon Supreme Court concluded that Portland City Code (PCC) 14A.60.010, which prohibits possession of loaded firearms in public, did not run afoul of the Second Amendment's protections of the right to bear arms. But *Christian* preceded the United States Supreme Court decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 US 1, 142 S Ct 2111, 213 L Ed 2d 387 (2022), a case that fundamentally altered the framework that courts must follow to determine whether a law that regulates firearm possession is constitutional under the Second Amendment. Under *Bruen*, a restriction on firearm possession is constitutional only if it is consistent with the nation's history of firearm regulation. *Id*. at 24.

The question presented by this appeal is whether, given *Bruen*, PCC 14A.60.010 remains constitutional. Defendant was charged with violating that ordinance after police found a loaded firearm in defendant's pocket. Defendant demurred to the information, arguing that the ordinance is unconstitutional on its face under the Second Amendment.[1] The trial court denied the demurrer, and defendant now appeals. He argues that, under *Bruen*, the ordinance is not consistent with historical traditions of regulating the carrying of loaded firearms in public. We disagree. As explained below, to prevail on his facial challenge, defendant must show that the ordinance cannot be constitutionally applied under any set of facts. However, as *Bruen* itself reflects, history is replete with instances of laws regulating the public carriage of firearms, and the law restricting defendant's conduct in this case—carrying a concealed, loaded firearm in public without a concealed handgun license—is well within the nation's historical traditions of firearm regulation. Accordingly, we affirm.[2]

---

[1] The Second Amendment is applicable to the states by way of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 US 742, 791, 130 S Ct 3020, 177 L Ed 2d 894 (2010) (holding that the individual rights recognized in *District of Columbia v. Heller*, 554 US 570, 128 S Ct 2783, 171 L Ed 2d 637 (2008) are applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment to the United States Constitution).

[2] Defendant also challenges the denial of his motion to suppress the weapon, contending that its discovery was the result of an unlawful stop. We have

PCC 14A.60.010(A) prohibits possession of a loaded firearm in a public place:

> "It is unlawful for any person to knowingly possess or carry a firearm, in or upon a public place, including while in a vehicle in a public place, recklessly having failed to remove all the ammunition from the firearm."

The ordinance has 14 exceptions to the prohibition, including an exception for people who are licensed to carry a concealed weapon.[3] PCC 14A.60.010(C).

---

reviewed the record and the trial court's factual findings and conclude that the court correctly denied his motion to suppress because he was not seized at the point in time that officers observed the weapon.

[3] The exceptions, which also "constitute affirmative defenses to a violation" of the ordinance, are:

"1. A police officer or other duly appointed peace officers, whether active or honorably retired.

"2. A member of the military in the performance of official duty.

"3. A person licensed to carry a concealed handgun.

"4. A person authorized to possess a loaded firearm while in or on a public building under ORS 166.370.

"5. A government employee authorized or required by his or her employment or office to carry firearms.

"6. A person summoned by a police officer to assist in making arrests or preserving the peace, while such person is actually engaged in assisting the officer.

"7. A merchant who possesses or is engaged in lawfully transporting unloaded firearms as merchandise.

"8. Organizations which are by law authorized to purchase or receive weapons from the United States or from this state.

"9. Duly authorized military or civil organizations while parading, or their members when going to and from the places of meeting of their organization.

"10. A corrections officer while transporting or accompanying an individual convicted of or arrested for an offense and confined in a place of incarceration or detention while outside the confines of the place of incarceration or detention.

"11. Persons travelling to and from an established target range, whether public or private, for the purpose of practicing shooting targets at the target ranges.

"12. Licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from a hunting or fishing expedition.

"13. A person authorized by permit of the Chief of Police to possess a loaded firearm, clip, or magazine in a public place in the City of Portland.

"14. A security guard employed at a financial institution insured by the Federal Deposit Insurance Corporation while the security guard is on duty."

PCC 14A.60.010(C).

As a threshold matter, we note that defendant's challenge to PCC 14A.60.010 is a facial one. The nature of that challenge circumscribes the scope of our review. A facial challenge is "the most difficult challenge to mount successfully," because it "requires a defendant to establish that no set of circumstances exists under which" the law would be valid. *United States v. Rahimi*, 602 US 680, 693, 144 S Ct 1889, 1898, 219 L Ed 2d 351 (2024) (internal quotation marks omitted). Thus, to prevail, the city here "need only demonstrate that [the ordinance] is constitutional in some of its applications." *Id.* If the city can establish, for instance, that the PCC is capable of constitutional application to people, like defendant, who carry loaded concealed firearms without lawful authorization, then defendant's facial challenge necessarily fails. *See id.* (rejecting a facial challenge to a statute by considering whether "the provision is constitutional as applied to the facts of [the petitioner's] own case").

We thus turn to that question. As noted at the outset of this opinion, in *Christian*, the Oregon Supreme Court considered and rejected an identical challenge to the one that defendant here presents. 354 Or at 46. Although the analytical framework for analyzing Second Amendment challenges has changed, *Christian* nonetheless provides a useful starting point for understanding the operation of the ordinance. There, the defendant was charged with violating PCC 14A.60.010 by carrying two loaded concealed handguns. *Id.* at 24. He contended, among other arguments, that PCC 14A.60.010 was facially unconstitutional under the Second Amendment. *Id.* at 41.

In rejecting that argument, the court began by interpreting the "meaning and reach" of PCC 14A.60.010. *Id.* at 26. In doing so, the court made several observations about the ordinance. First, the court observed that the ordinance "is not directed in any way to the manner of possession or use of firearms for self-defense within the home." *Id.* at 29. That is because, by definition, the ordinance "regulates *** public places only." *Id.* Second, the court noted that PCC 14A.60.010 "does not prohibit the mere possession of firearms in public places but specifically regulates only

the manner of possession, namely, knowingly possessing or carrying a loaded firearm in public and recklessly failing to remove all of the ammunition." *Id.* Third, "the ordinance does not prohibit a person from knowingly possessing or carrying a loaded firearm in a public place if the 'person [is] licensed to carry a concealed handgun.'" *Id.* (quoting PCC 14A.60.010(C)(3)); *see also* ORS 166.173 (providing that a city "may adopt ordinances to regulate, restrict or prohibit the possession of loaded firearms in public places" but that such ordinances "do not apply to or affect * * * [a] person licensed to carry a concealed handgun"); ORS 166.291 - 166.292 (setting forth the qualifications and procedures for issuing a concealed carry license). Related to that third point, the court observed that there were "early American examples of restrictions on the rights of individuals to carry or use personal weapons"; for example, "many courts have upheld statutes prohibiting the carrying of concealed weapons." *Christian*, 354 Or at 30 (internal quotation marks omitted).

    With the issue so framed, the court then turned to the defendant's argument that the ordinance violated the Second Amendment. At that time, the leading case guiding the court's resolution of that question was *District of Columbia v. Heller*, 554 US 570, 128 S Ct 2783, 171 L Ed 2d 637 (2008). In *Heller*, the United States Supreme Court considered the extent to which the Second Amendment protects the rights of individuals to possess firearms for self-protection. *Id.* at 573. After *Heller*, courts across the country followed a two-part analysis for determining whether a law prohibiting possession of a firearm survived a Second Amendment challenge. At the first step, looking at the text and history of the Second Amendment, courts upheld regulations if the state "establish[ed] that the challenged law regulates activity falling outside the scope of the [Second Amendment] right as originally understood." *Bruen*, 597 US at 18 (internal quotation marks omitted). If not, courts then addressed a second question, assessing "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (internal quotation marks omitted). Courts applied strict scrutiny if the "core" Second Amendment right was burdened—such as

self-defense—and, if not, courts applied intermediate scrutiny. *Id.* at 18-19.

Applying that so-called "means-end" framework in *Christian*, the Oregon Supreme Court concluded that the city had demonstrated that it is important to protect the public from the risks that come with people possessing loaded firearms in public and—applying an intermediate level scrutiny—that PCC 14A.60.010 was substantially related to that objective and therefore was permissible under *Heller*. *Christian*, 354 Or at 46. And, as particularly significant here, in reaching that conclusion, the court noted that reasonable restrictions on possession of firearms, including prohibitions on carrying concealed weapons, have historically been upheld against constitutional challenge. *Id.* at 31-33.

Although the city urges us to view *Christian* as a complete answer to defendant's challenge, we decline to view it as such. That is because *Christian* preceded the United States Supreme Court's landmark decision in *Bruen*. And as we recently explained in *State v. Parras*, 326 Or App 246, 252, 531 P3d 711, *rev allowed*, 372 Or 763 (2024), *Bruen* expressly rejected the means-end framework that courts followed in the wake of *Heller*. The question in *Bruen* was whether "ordinary, law-abiding [individuals] have a [right] to carry handguns publicly for their self-defense." 597 US at 9-10. The Court observed the pattern, which emerged post-*Heller*, of courts using a two-step framework for analyzing Second Amendment challenges and "decline[d] to adopt that two-part approach." *Id.* at 17. The Court concluded that—although "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history"— "*Heller* and *McDonald* [*v. City of Chicago*, 561 US 742, 130 S Ct 3020, 177 L Ed 2d 894 (2010),] do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 597 US at 19.

*Bruen* replaced that framework with a new one: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's

historical tradition of firearm regulation." *Id.* at 24. The court explained, "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (internal quotation marks omitted).

Because the Court rejected the means-end scrutiny that the Oregon Supreme Court used in *Christian*, replacing it with a singular historical focus, we have to consider whether, post-*Bruen*, PCC 14A.60.010 is constitutional. That is not to say that *Christian* has no utility to our analysis. Indeed, "[w]hy and how the regulation burdens the right [to possess firearms] are central" to the question of its constitutionality. *Rahimi*, 602 US at 681 (citing *Bruen*, 597 US at 30). Thus, how *Christian* described the operation and function of PCC 14A.60.010 is still relevant to and informs our analysis. That is, as the court in *Christian* described, the ordinance is not aimed at firearm possession in the home, is not a total ban on the possession of firearms in public places, and permits those who have concealed carry licenses to possess loaded firearms in public. 354 Or at 29. Further, how and where people may carry weapons has historically been subject to regulations. *Id.* at 30.

With that understanding in mind, we must now determine whether the ordinance implicates defendant's rights under the Second Amendment and, if so, whether its limits on possessing firearms in public can be applied in a manner consonant with the national's history of regulating firearms. We have little difficulty concluding that, under step one of the *Bruen* analysis, *i.e.*, whether the Second Amendment's plain text covers an individual's conduct, the prohibited conduct falls within the scope of what the Second Amendment protects. *See Rahimi*, 602 US at 693 (assuming that the defendant was protected by the Second Amendment even though he had committed "family violence."). We turn then to the question of whether PCC 14.60.010's prohibition on possessing a loaded firearm in public, subject to exceptions for, among other things, being licensed to carry a concealed handgun, is consistent with the nation's tradition of firearm regulation. Again, because defendant's challenge is a facial one, we need only find that the ordinance is

capable of constitutional application in any scenario. Here, as in *Rahimi*, the facts of defendant's own case—carrying a loaded firearm in public without a concealed handgun license—demonstrate a common scenario in which it can be constitutionally applied.

Indeed, we need look no further than *Bruen* (and *Heller* before it) to conclude that PCC 14.60.010's prohibition on carrying loaded firearms in public, subject to exception for those licensed to carry concealed handguns, is consistent with historical traditions of firearm regulation. *Bruen* is replete with references, both in the majority opinion and in concurrences, to the lawfulness of restrictions on the right to carry weapons in public, particularly with respect to concealed weapons. The specific question before the court in *Bruen* was whether New York's discretionary licensing regime (also known as a "may-issue regime") violated the Second Amendment because it prohibited people from possessing firearms absent some showing of a special need for self-defense. 597 US at 11. In concluding that that law violated the Second Amendment, *Bruen* was nevertheless careful to note that "the right to bear commonly used arms in public [is] subject to certain reasonable, well-defined restrictions." *Id.* at 70; *see also Heller*, 554 US at 626 ("Like most rights," however, "the right secured by the Second Amendment is not unlimited."). And in *Bruen*, the court reiterated that "the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." 597 US at 38. Although the court noted that states could "not ban public carry altogether," *id.* at 53, the historical evidence "from antebellum America does demonstrate that *the manner* of public carry was subject to reasonable regulation," *id.* at 59 (emphasis added). "Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *Id.* at 70. The court observed that history was replete with examples of prohibitions on carrying concealed weapons and noted that "'the majority

of the 19th-century courts to consider the question held that *** prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.'" *Id.* at 52 (quoting *Heller*, 554 US at 626).

Justice Alito, in his concurrence, echoed the majority in observing that nothing that the court held in *Bruen* "disturbed anything that we said in *Heller* or *McDonald* *** about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 597 US at 72 (Alito, J., concurring); *see also Heller* 554 US at 626-27 & n 26 ("From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.").

In his concurrence in *Bruen*, Justice Kavanaugh compared the "may-issue" licensing regime challenged in *Bruen* with "shall-issue licensing regimes" (where law enforcement officers are required to issue a concealed-license permit to anyone who meets minimal and certain statutory requirements). 597 US at 79-80 (Kavanaugh, J., concurring). In Justice Kavanaugh's view, shall-issue licensing regimes are "constitutionally permissible." *Id.* at 80. He explained that "the Court's decision does not prohibit States from imposing licensing requirements for carrying [weapons]" and that "the 43 states that employ objective shall-issue licensing regimes for carrying handguns *** may continue to do so." *Id.* at 79-80. Oregon, the majority in *Bruen* noted, is one of those states with a shall-issue licensing regime. *Id.* at 13 n 1.

In short, *Bruen* (and, to some extent, *Heller*) supports our conclusion that PCC 14A.060.010 is capable of constitutional application, at least as to individuals who carry loaded, concealed firearms without obtaining a concealed handgun license through Oregon's shall-issue licensing scheme. As *Christian* observed, PCC 14A.60.010 is not a complete ban on the possession of loaded firearms in public. 354 Or at 40. To the contrary, there are many ways in which possession can be lawful under the ordinance, including if a person has a concealed carry license. *Id.* at 29. The manner of regulation of carrying firearms under the ordinance,

as it relates to defendant's conduct, has existed throughout our nation's history; limiting a person's ability to carry a loaded concealed weapon—particularly where the state has a shall-issue licensing regime, as Oregon does—is consistent with the nation's history of regulating firearm possession. Because PCC 14A.60.010 is capable of constitutional application, defendant's facial challenge fails.

Affirmed.