No. 73 February 5, 2025 621

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON
and City of Portland,
*Plaintiffs-Respondents,*

*v.*

TIMOTHY JACK ROBERT VINGE,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR04892; A180291

Kelly Skye, Judge.

Argued and submitted November 20, 2024.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent State of Oregon. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Denis M. Vannier argued the cause and filed the brief for respondent City of Portland.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

The state charged defendant with unlawful possession of a firearm, ORS 166.250, and possession of a loaded firearm in public, Portland City Code 14A.60.010. Defendant demurred to both charges, contending that the laws were facially unconstitutional under the Second Amendment. The trial court denied the demurrer, and defendant pled guilty to both charges, reserving his right to challenge the denial of the demurrer on appeal. On appeal, he reprises his argument that both the state statute and the Portland City Code are facially unconstitutional.

We recently rejected a similar challenge to Portland City Code 14A.60.010 in *City of Portland v. Sottile*, 336 Or App 741, ___ P3d ___ (2024). That decision disposes of defendant's challenge to the city ordinance. And, as we explain below, although *Sottile* addressed the constitutionality of the ordinance and not ORS 166.250, *Sottile*'s reasoning goes a long way toward resolving defendant's constitutional challenge to ORS 166.250, inasmuch as it demonstrates that regulating the manner of carriage of firearms is wholly consistent with the Second Amendment. We affirm.

We begin by describing both what ORS 166.250 prohibits and, because that statute cross-references several other provisions that bear on its operation, those related statutes. ORS 166.250(1) prohibits a person from carrying a concealed firearm on their person or in any vehicle, if the weapon is "readily accessible" to the person within the vehicle.[1] That prohibition, however, does not apply to someone who is "licensed under ORS 166.291 and 166.292 to carry a concealed handgun." ORS 166.260(1)(i).

ORS 166.291 and ORS 166.292, in turn, set forth the requirements for obtaining and issuing a concealed handgun license. If a person meets the statutory requirements, the sheriff "shall issue the person a concealed handgun license." ORS 166.291(1).[2] Under ORS 166.293(2), a sheriff

---

[1] The statute expressly excludes possession of firearms in a residence or in a business. ORS 166.250(2)(b).

[2] ORS 166.291 was amended after defendant's conviction.. *See* Or Laws 2022, ch 97, § 5 (effective Jan 1, 2023). Those amendments do not affect our analysis, and we refer to the current version of the statute.

"may deny" a concealed carry license when the sheriff has "reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence."

So framed, we turn to defendant's constitutional challenge. Defendant's challenge to ORS 166.250 is a facial one, which necessarily circumscribes the scope of our review. "A facial challenge is 'the most difficult challenge to mount successfully,' because it 'requires a defendant to establish that no set of circumstances exists under which' the law would be valid." *Sottile*, 336 Or App at 744 (quoting *United States v. Rahimi*, 602 US 680, 693, 144 S Ct 1889, 1898, 219 L Ed 2d 351 (2024)). To prevail, the state "need only demonstrate that [the statute] is constitutional in some of its applications." *Rahimi*, 602 US at 693. If the state can establish, for example, that the statute is "capable of constitutional application to people, like defendant, who carry loaded concealed firearms without lawful authorization, then defendant's facial challenge necessarily fails." *Sottile*, 336 Or App at 744 (citing *Rahimi*, 602 US at 693 (rejecting a facial challenge to a statute by considering whether "the provision is constitutional as applied to the facts of [the petitioner's] own case")).

We thus turn to the question whether ORS 166.250 is capable of constitutional application. To answer that question, we apply the framework set out in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 US 1, 24, 142 S Ct 2111, 213 L Ed 2d 387 (2022): "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." The Court explained, "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of California*, 366 US 36, 49 n 10, 81 S Ct 997, 6 L Ed 2d 105 (1961).

Under step one of the *Bruen* analysis, *i.e.*, whether the Second Amendment's plain text covers an individual's conduct, ORS 166.250's prohibition falls within the scope of what the Second Amendment protects. *See Rahimi*, 602 US at 693 (assuming that the defendant was protected by the Second Amendment even though he had committed "family violence"); *Sottile*, 336 Or App at 747. We turn then to the question whether ORS 166.250's prohibition on possessing a concealed firearm in public, subject to an exception for those who are licensed to carry a concealed handgun, is consistent with the nation's tradition of firearm regulation.

As we explained in *Sottile*, *Bruen* is replete with references, both in the majority opinion and in the concurrences, to the lawfulness of restrictions on the right to carry weapons in public, particularly with respect to concealed weapons. *Bruen*, 597 US at 38 ("[T]he right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms."). The Court observed that "[t]he historical evidence from antebellum America does demonstrate that *the manner* of public carry was subject to reasonable regulation." *Id.* at 59 (emphasis in original); *see also id.* at 70 ("Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials."). Because history was replete with examples of prohibitions on carrying concealed weapons, the Court acknowledged that "'the majority of the 19th-century courts to consider the question held that *** prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.'" *Id.* at 52 (quoting *District of Columbia v. Heller*, 554 US 570, 626, 128 S Ct 2783, 171 L Ed 2d 637 (2008)). In short, "[s]tates could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Id.* at 59; *see also Sottile*, 336 Or App at 748-50 (discussing *Bruen*). ORS 166.250's prohibition on carrying concealed weapons in public is thus consonant with those historical limitations.

Defendant nevertheless contends that Oregon's concealed-carry-licensing scheme takes Oregon's concealed carry law outside of historical limitations. More specifically, he points to ORS 166.293(2), which permits a sheriff to deny a concealed carry license when the sheriff has reasonable grounds to believe that the applicant may pose a danger to themselves or to others. In defendant's view, that discretion renders Oregon's statutory scheme similar to the one that the Court struck down in *Bruen*. The New York law at issue in *Bruen* made it a crime to possess a firearm without a license, in or out of the home. 597 US at 11-12 (discussing New York's licensing scheme). It permitted individuals to apply for a license to carry a concealed weapon in public if they could "demonstrate a special need for self-protection distinguishable from that of the general community." *Id.* at 12 (internal quotation marks omitted). To possess a firearm at home, an individual was required to demonstrate that they were of good moral character, had no criminal history or mental illness, and that "no good cause exist[ed] for the denial of the license." *Id.* (internal quotation marks omitted). Those determinations were made by a licensing officer. *Id.* The Court noted that New York did not stand alone in requiring a permit to carry a handgun in public, but that the "vast majority" of states—including Oregon—are "shall issue" jurisdictions. *Id.* at 13 n 1; *see also id.* at 79-80 (Kavanaugh, J., concurring) (contrasting "may issue" licensing statutes with "shall issue" statutes and describing Oregon's statute as falling into the latter category). "Shall issue" jurisdictions are those in which the state must issue concealed carry licenses "whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id.* at 13. In contrast to "shall issue" licensing statutes, "may issue" licensing laws give states discretion to deny concealed carry licenses even when the applicant satisfies the statutory criteria. *Id.* at 13-14. New York's statute, being an example of a "may issue" regime, was

> "constitutionally problematic because it grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense. Those features of New York's

regime—the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many 'ordinary, law-abiding citizens.'"

*Id.* at 79 (Kavanaugh, J., concurring).

Notwithstanding the Court's description of Oregon's concealed carry licensing statutes as being "shall issue" (and thus constitutional), defendant contends that Oregon's statutes are in fact more akin to the "may issue" law at issue in *Bruen*. Even if, for purposes of a Second Amendment analysis, we are at liberty to frame Oregon's statutory scheme in a manner at odds with the Supreme Court's understanding of it, there are nevertheless two flaws with defendant's argument. The first is that Oregon's statutes, unlike New York's, do not require any kind of demonstrated need or good-cause requirement. Oregon officials "shall" issue a concealed carry license if a person meets the statutory criteria. ORS 166.291(1).[3] There is a limited exception to that mandate if a sheriff has grounds to believe that the applicant may pose a danger to themselves or to others because of a mental illness or violence, ORS 166.293(2), but that limitation is unlike the requirements under New York's law, which granted the licensing officials "unchanneled" discretion. And notably, the bases upon which a sheriff can deny a license are themselves consistent with historical limitations on individuals carrying firearms. *See State v. H. N.*, 330 Or App 482, 491-92, 545 P3d 186 (2024) (noting that history was replete with examples of disarming those who were prone to violence or who suffered from mental illness and posed a danger to themselves or to others).

More fundamentally, however, defendant's argument is untenable given the nature of his facial challenge. Unquestionably, there are applications of the statutes that would be constitutional. *See Sottile*, 336 Or App at 744 (quoting *Rahimi*, 602 US at 693 (requiring a defendant "to establish that no set of circumstances exists under which the law would be valid" (internal quotation marks omitted))). For instance, as the state notes, if a person did not apply for a

---

[3] Defendant expressly does not challenge that statute nor suggest that it is unconstitutional.

concealed carry permit, the specific requirements for receiving a permit would not be at issue and could not render ORS 166.250(1)(b) unconstitutional. Or, again as the state notes, if a person applied for a concealed carry permit and the sheriff denied the application because that person had a prior felony conviction, then application of ORS 166.250(1)(b) to that person would have nothing to do with the parts of the concealed carry license statutes that defendant has identified.

In short, defendant's facial challenge to ORS 166.250 fails, and we affirm.

Affirmed.