696                 July 9, 2025                No. 611

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

IDAHO POWER COMPANY,
*Petitioner-Appellant,*

*v.*

Douglas Baldwin BEAN,
Mallory Hardt Bean and Madeline Baldwin Bean,
Partners doing business as 516 Ranch Partnership,
an Oregon general partnership; and For The Girls LLC,
an Oregon limited liability company,
*Respondents-Respondents.*

Union County Circuit Court
23CV12213; A182676

Wes Williams, Judge.

Argued and submitted May 28, 2025.

Sara Kobak argued the cause for appellant. Also on the briefs were Andrew J. Lee and Schwabe, Williamson & Wyatt, PC.

Brent H. Smith argued the cause and filed the brief for respondents.

Christina M. Martin and Austin W. Waisanen, Wyoming, filed the brief *amicus curiae* for Pacific Legal Foundation.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed the brief *amicus curiae* for Oregon Department of Education.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Petitioner, Idaho Power Company (Idaho Power), is building a transmission line that will span approximately 293 miles and transfer electricity generated in Boardman, Oregon to Idaho Power's Hemingway substation in Owyhee County, Idaho. Respondents, 516 Ranch, own property that lies on the proposed path of that transmission line. Idaho Power is appealing a general judgment denying its petition under ORS 35.220 for precondemnation entries onto 516 Ranch's real property.

The trial court determined that ORS 35.220—a statute that allows Idaho Power to enter 516 Ranch's property to conduct necessary precondemnation examinations, surveys, tests, and sampling—was unconstitutional because it violated the Takings Clause of Article I, section 18, of the Oregon Constitution and the Takings Clause of the Fifth Amendment to the United States Constitution.[1] As

---

[1] ORS 35.220 provides, in full:

"(1) Subject to the requirements of this section, a condemner may enter upon, examine, survey, conduct tests upon and take samples from any real property that is subject to condemnation by the condemner. A condemner may not enter upon any land under the provisions of this section without first attempting to provide actual notice to the owner or occupant of the property. If the condemner has not provided actual notice, written notice must be posted in a conspicuous place where the notice is most likely to be seen. The posted notice must give the condemner's name, address and telephone number and the purpose of the entry. A condemner may conduct tests upon or take samples from real property only with the consent of the owner or pursuant to an order entered under subsection (2) of this section. All testing and sampling must be done in conformity with applicable laws and regulations. Testing and sampling results shall be provided to the owner upon request.

"(2) If the owner of property objects to examination or survey of the property under this section, or does not consent to the terms and conditions for testing or sampling of the property, the condemner may file a petition with the court seeking an order providing for entry upon the property and allowing such examination, survey, testing or sampling as may be requested by the condemner. The court may enter an order establishing reasonable terms and conditions for entry and for any examination, survey, testing or sampling of the property requested by the condemner. Reasonable compensation for damage or interference under subsection (3) of this section may be established in the proceeding either before or after entry is made upon the property by the condemner.

"(3) An owner is entitled to reasonable compensation for:

"(a) Any physical damage caused to the property by the entry upon or examination, survey, testing or sampling of the property, including any

explained below, we conclude that the trial court erred when it determined that ORS 35.220 was unconstitutional.

Specifically, the trial court concluded that the precondemnation entries that Idaho Power sought were "takings" for which 516 Ranch was due "just compensation." The trial court reached that conclusion because, in its view, the requested entries interfered with 516 Ranch's "right to exclude" and were not consistent with "longstanding background restrictions on property rights" or "traditional common law privileges to access private property."

The trial court further concluded that ORS 35.220 was unconstitutional "to the extent [it] allows a condemner to enter onto one's property to conduct examinations, surveys, tests, and samples of the property without the consent of the owner and without just compensation."

We conclude that the trial court erred when it determined that the precondemnation entries Idaho Power sought were "takings" under Article I, section 18, and the Fifth Amendment; that is because, as explained below, temporary precondemnation entries—at least insofar as they do not cause any "substantial interference with the property's possession or use" or "any physical damage"—are consistent with "longstanding background restrictions on property rights" and "traditional common law privileges to access private property."

Importantly, in this case, the trial court determined that 516 Ranch had failed to show that the temporary precondemnation entries Idaho Power sought would result in

damage attributable to the diffusion of hazardous substances found on the property; and

"(b) Any substantial interference with the property's possession or use caused by the entry upon or examination, survey, testing or sampling of the property.

"(4) If a condemner is required to pay compensation to an owner in a proceeding under subsection (2) of this section, and the condemner thereafter seeks condemnation of the same property, the owner is not entitled to any payment of compensation in the condemnation action that would result in the owner receiving a second recovery for the same damage or interference.

"(5) Nothing in this section affects any liability under any other provision of law that a condemner may have to an owner or occupant of property by reason of entry upon or examination, survey, testing or sampling of property."

either "[a]ny physical damage" or "[a]ny substantial interference with the property's possession or use." Consequently, the trial court erred when it concluded that ORS 35.220 was unconstitutional as applied in this case.[2] We reverse and remand.

We note, however, that under ORS 35.220, if the temporary precondemnation entries Idaho Power seeks do result in "physical damage" to the property or "substantial interference" with 516 Ranch's use or possession of the property, 516 Ranch is entitled to compensation under ORS 35.220.

## I.  BACKGROUND

As context for our discussion of the facts of this case and the trial court's ruling, we begin by describing the operation of ORS 35.220, which allows a condemnor to institute an action to obtain an order allowing the condemnor to enter private property that is subject to condemnation for certain purposes prior to condemnation. We then turn to a description of the historical facts and the instant litigation.

### A.  *ORS 35.220*

In 2003, the legislature adopted ORS 35.220 to "provide a single statutory source that outlines both the authority for pre-condemnation rights of entry for all condemning bodies and the procedures for landowners to obtain a judicial determination of liabilities and damages." *See* Exhibit O, House Committee on Judiciary, HB 3372, Apr 1, 2003 (Oregon Law Commission, Eminent Domain: Pre-condemnation Entry on Property for Examination, Survey, and Testing Report (HB

---

[2]  In their briefing, neither party uses the term "as-applied challenge" or "facial challenge" when discussing the trial court's constitutional ruling on ORS 35.220. During oral argument, 516 Ranch explained that, in the trial court, "the record [it] attempted to develop was definitely an as-applied challenge." And Idaho Power acknowledged at oral argument that 516 Ranch's challenge to the constitutionality of ORS 35.220 "may be better characterize[ed]" as an as-applied challenge.

Because the question in a facial challenge is whether there is any set of circumstances in which ORS 35.220 could be valid, *see City of Portland v. Sottile*, 336 Or App 741, 744, 561 P3d 1159 (2024) (a facial challenge "requires a [party] to establish that no set of circumstances exists under which" the law would be valid), and, as discussed below, the parties appear to agree that ORS 35.220 is valid with respect to "land surveys" and an "appraisal field visit," we understand this to be an as-applied challenge; that is, if it was a facial challenge, the statute would be valid, because it is undisputedly valid regarding the land surveys and appraisal field visit.

3372), Nov 22, 2002). Under ORS 35.220(1), a condemner may "enter upon, examine, survey, conduct tests upon and take samples" from any property that is subject to condemnation, provided that the notice provisions of the statute are adhered to. If a landowner objects or does not consent—as 516 Ranch in this case has done—under ORS 35.220(2), the condemner may seek a court order providing for entry onto the property and "allowing for such examination, survey, testing or sampling as may be requested by the condemner." In such a proceeding, the court "may enter an order establishing reasonable terms and conditions for entry and for any examination, survey, testing or sampling of the property requested by the condemner."

Pursuant to ORS 35.220(3), a landowner is entitled to "reasonable compensation" for "[a]ny physical damage caused to the property by the entry upon or examination, survey, testing or sampling of the property" or "[a]ny substantial interference with the property's possession or use caused by the entry upon or examination, survey, testing or sampling of the property." The right to such compensation under ORS 35.220(3) may be established either "before or after entry is made on the property by the condemner."

Additionally, ORS 35.220(5) provides that nothing in ORS 35.220 "affects any liability under any other provision of law that a condemner may have to an owner or occupant of property by reason of entry upon or examination, survey, testing or sampling of property."

Thus, ORS 35.220 provides that a landowner will receive notice prior to precondemnation entries, ORS 35.220(1); provides a condemner with a mechanism to obtain a court order if the landowner objects or does not consent to entry, with conditions to be set by the court, ORS 35.220(2); and provides the landowner with the right to obtain redress for "any physical damage" or "substantial interference" with the property's possession or use, without precluding the landowner from resorting to any other remedies that may be available under the law, ORS 35.220(3), (5).

B.  *Historical Facts*

Idaho Power is a public utility, ORS 772.205(2), and is statutorily authorized to "enter upon lands within this

state in the manner provided by ORS 35.220," for the purpose of "examining, locating and surveying the line thereof and also other lands necessary and convenient for the purpose of construction of service facilities, doing no unnecessary damage thereby," ORS 772.210(1).

Idaho Power is building a 500-kilovolt transmission line that will span approximately 293 miles. The line will transfer electricity generated in Boardman, Oregon to Idaho Power's Hemingway substation in Owyhee County, Idaho. The transmission line project is (aptly) known as the Boardman to Hemingway Transmission Line (B2H) project. Idaho Power initiated the B2H project in 2007, and in 2023, the Oregon Supreme Court affirmed the Oregon Energy Facility Siting Council's final order approving the site certificate for the B2H transmission line. *Stop B2H Coalition v. Oregon Dept. of Energy*, 370 Or 792, 795, 525 P3d 864 (2023).

516 Ranch owns approximately 12,000 acres of ranch and timber land in Union County, Oregon (the Ranch). The Ranch lies on the proposed path of the B2H project. On the Ranch, 516 Ranch raises cattle, harvests timber, and allows hunting for a fee. The Ranch is home to native plant and animal species and significant cultural and archeological sites.

Construction on the B2H project was scheduled to start in 2023—the same year that the trial court issued the judgment now on appeal. As the trial court found, Idaho Power "*must* ensure that the project's path complies with permitting and siting requirements, including that it does not conflict with any protected resources." (Emphasis added.) To ensure compliance, Idaho Power "*must* conduct surveys, tests, and samples on [516 Ranch's] property." (Emphasis added.) The "surveys, tests, and samples" that Idaho Power must conduct include "three-toed woodpecker and northern goshawk surveys, rare plant inspection, gray owl and flammulated owl surveys, wetlands inspection, terrestrial visual encounter surveys, noxious weeds surveys, cultural resource surveys, enhanced archeological surveys, and historic properties management plan surveys, geotechnical drilling, land surveys, and an appraisal field visit."

As noted by the trial court, Idaho Power cannot say with certainty how many entries will be required for it to accomplish the various surveys, tests, and samplings that it must complete. On appeal, Idaho Power points to evidence that the necessary entries "may take as few as six days to complete, depending on the availability of field crews and other survey timing restrictions," but the trial court found they "may amount to as many as thirty-two visits onto the property."

Idaho Power's entries on the Ranch will primarily involve driving pick-up trucks and sometimes a trailer onto the property with crews of anywhere from one to five persons. Four of the entries will involve "some ground disturbance." The geotechnical drilling will involve a "small track vehicle." The "small track vehicle" is somewhere between the size of an "F-350, but it's not quite as big as a large excavator." The geotechnical drilling involves a "drilling crew" drilling "boreholes approximately 6 to 8 inches in diameter," which will be "backfilled."

Idaho Power sent letters to 516 Ranch requesting access to the Ranch to conduct the necessary precondemnation surveys, testing, and sampling. Although historically 516 Ranch had consented to some entries by Idaho Power in connection with the B2H project, 516 Ranch did not consent to further entries by Idaho Power.[3]

C.   *The Instant Litigation*

Idaho Power then filed the instant action pursuant to ORS 35.220. *See* ORS 35.220 ("If the owner of property objects to examination or survey of the property under this section, *** the condemner may file a petition with the court seeking an order providing for entry upon the property and allowing such examination, survey, testing or sampling as may be requested by the condemner."). After some litigation, 516 Ranch consented to Idaho Power's entry for the purpose of "land surveys" and an "appraisal field visit," as reflected in a limited judgment entered by the trial court. 516 Ranch continued to object, however, to the other precondemnation activities

---

[3] 516 Ranch asserts that that they did not consent to further entries by Idaho Power after one of Idaho Power's subcontractors "entered the ranch in an unmarked truck without notice, drove off-road, and left a gate open, creating a risk that cattle would escape their pastures."

Idaho Power sought to conduct on the Ranch. 516 Ranch argued that those activities were a "*per se* taking of private property because the requested entries interfered with [the] Ranch's right to exclude and were not consistent with 'longstanding background restrictions on property rights' or 'traditional common law privileges to access private property.'"[4]

The trial court agreed with the Ranch. It first acknowledged that ORS 35.220(3) permits a property owner to "recover reasonable compensation before entry" if a precondemnation entry by a condemnor will cause either "substantial interference with the property's possession or use" or "any physical damage" to the property but determined that that standard had not been met here. The court explained that 516 Ranch was "unable to mount enough proof to establish a 'substantial interference' with the property's possession or use caused by the entry upon or examination, survey, testing or sampling of the property," and "[w]ith the precondemnation entries contemplated here it would be very difficult to prove before the entry how the property would be physically damaged."

Nevertheless, the trial court concluded that the "precondemnation entries amount to a 'taking' under the Oregon and/or United States Constitutions for which 'just compensation' is required." In so concluding, it reasoned that this is not a case involving "a permanent physical occupation," but rather what Idaho Power seeks is "a series of temporary entries to conduct examinations, surveys, tests, and samples." That "series of temporary entries," the trial court concluded, deprived 516 Ranch of "that most essential property right: the right to exclude others from one's property." Further, the trial court noted that it is not the case that "all forms of entry amount to a taking," insofar as there are "traditional common law privileges to access private property which do not amount to a 'taking.'" But, the trial court concluded, the entries Idaho Power sought, "in the aggregate," amount to a taking under the Oregon Constitution and the United States Constitution.

---

[4] Regarding the "land surveys" and "appraisal field visit" that 516 Ranch consented to, 516 Ranch agreed that a "land survey and an appraisal field visit within the scope of ORS 35.220" is "consistent with longstanding background restrictions on property rights."

As a result of those determinations, the trial court concluded that to "the extent ORS 35.220 allows a condemner to enter onto one's property to conduct examinations, surveys, tests, and samples of the property without the consent of the owner and without just compensation, it is unconstitutional."

In reaching its conclusion that the precondemnation entries at issue in this case constituted a "taking," the trial court relied on *Cedar Point Nursery v. Hassid*, 594 US 139, 143-44, 141 S Ct 2063, 210 L Ed 2d 369 (2021), which, as explained below, held that a California regulation that granted labor organizations a "right to take access" to an agricultural employer's property in order to solicit support for unionization constituted a "*per se* physical taking under the Fifth and Fourteenth Amendments."

After reaching its conclusion regarding the constitutionally of ORS 35.220, the trial court ordered Idaho Power to "attempt to agree" with 516 Ranch with respect to the compensation to be paid for its entries, and if no agreement could be reached, then Idaho Power could commence "an action to condemn the property" under ORS 35.245.[5]

The trial court then entered a general judgment denying Idaho Power's petition for precondemnation entry onto the Ranch.[6] This appeal by Idaho Power followed.[7]

---

[5] ORS 35.245 provides:

"(1) If the condemner is unable to agree with or locate the owner of the property under ORS 35.235, then an action to condemn property may be commenced in the circuit court of the county in which the property proposed to be condemned, or the greater portion thereof, is located.

"(2) An action may be commenced against the person in whose name the record title appears. There may be included as defendants any lessee or other person in possession and all other persons having or claiming an interest in the property."

[6] The general judgment denied the petition for precondemnation entry onto the Ranch "except as otherwise granted in the court's limited judgment"—*i.e.*, the limited judgment noted above allowing entry for the purpose of an appraisal field visit and land surveys.

[7] We note that *amicus curiae* the Oregon Department of Transportation has filed a brief in support of Idaho Power, in which it contends that the trial court erred in denying Idaho Power entry to the Ranch. *Amicus curiae* Pacific Legal Foundation has filed a brief in support of 516 Ranch, contending that "background principles of Oregon property law do not include a prospective condemner's repeated access to private property for pervasive information gathering."

## II.   ANALYSIS

On appeal, Idaho Power argues that the trial court erred in denying its petition to conduct precondemnation surveys under ORS 35.220 because "the right to precondemnation entry for necessary surveys is a longstanding limit on property rights." And because ORS 35.220 "is consistent" with the "privilege for a condemning body to conduct precondemnation surveys to determine suitability for eminent domain," and provides for a means of redress for property owners, ORS 35.220 "does not authorize any *per se* physical takings without just compensation." Thus, Idaho Power contends that ORS 35.220 is not unconstitutional as applied in this case.

As 516 Ranch sees it, the trial court did not err in denying Idaho Power's petition for precondemnation access to the Ranch under ORS 35.220. 516 Ranch asserts that ORS 35.220 creates a "right for Idaho Power to invade 516 Ranch's property and takes 516 Ranch's right to exclude Idaho Power from its property," and that such entries "amount to *per se* physical takings." We understand 516 Ranch to argue that the type of precondemnation entries at issue here—which 516 Ranch characterizes as "studies of birds, plants, animals, noxious weeds, wetlands, cultural resources and geotechnical drilling over as many as thirty-two visits"—are not "'consistent with longstanding background restrictions on property rights'" or a "'traditional common law [privilege] to access private property.'" (Quoting *Cedar Point Nursey*, 594 US at 158, 160; brackets in 516 Ranch's brief.).[8]

---

[8] In advancing its arguments on appeal, 516 Ranch also contends that the "longstanding background restriction on property rights is for land surveys and an entry for the purpose of making the preliminary examination and survey, conducted only for a reasonable time." 516 Ranch contends that, in deciding this case, "this court ought to answer" certain questions—*e.g.*, "Are 15 years of entries followed by thirty-two more entries consistent with an entry *** for the purpose of making the preliminary examination and survey" and "conducted only for a reasonable time?"

But we do not understand the trial court to have based its ruling on a determination that the precondemnation entries at issue here were "unreasonable" either in type or duration—indeed, the trial court's opinion does not reference the prior "15 years of entries" to which 516 Ranch refers on appeal or whether the future entries Idaho Power seeks are "reasonable" or "unreasonable." To the extent 516 Ranch contends that any specific entry is unreasonable, that is an argument better made to and ruled on by the trial court in the first instance on remand.

Additionally, 516 Ranch argues that "what Idaho Power seeks is a temporary investigative easement for which it must pay just compensation." We disagree. As

"We review the trial court's ruling regarding the constitutionality of a statute for an error of law." *State v. Betnar*, 214 Or App 416, 419, 166 P3d 554 (2007). As presented to us, we understand the legal question in this appeal to be whether necessary precondemnation examinations, surveys, tests, and sampling, authorized by ORS 35.220, which do not amount to "substantial interference" with a property owner's use or possession of the property, do not "physically damage" the property, and do not involve a "permanent physical occupation" of property, amount to uncompensated *per se* physical takings of private property in violation of the takings clauses in the Oregon Constitution and the United States Constitution.[9] If they do, then ORS 35.220 is unconstitutional, at least with regard to the entries in this case and as applied here, because it permits such entries without requiring compensation be paid to a property owner.

As explained below, under *Cedar Point Nursery*, answering that legal question requires consideration of whether such entries are "consistent with longstanding background restrictions on property rights."

We begin our analysis by describing the Takings Clause of the Oregon Constitution and the United States Constitution, before turning to the question whether necessary and temporary precondemnation entries onto a property owner's land that do not cause "substantial interference" or "physically damage" property are "consistent with longstanding background restrictions on property rights." We then explain why the trial court erred in ruling that ORS 35.220 was unconstitutional.

A.   *"Takings" and* Cedar Point Nursery

The Takings Clause of the Oregon Constitution—found in Article I, section 18—provides:

explained in this opinion, given the trial court's determinations, we understand Idaho Power to seek temporary precondemnation entry in a manner that will not "physically damage" or "substantially interfere" the Ranch's use and possession. As explained below, that is a type of entry that is "consistent with longstanding background restrictions on property rights."

[9] That is because, as noted, the trial court determined 516 Ranch had not established that the entries at issue will "substantially interfere" with 516 Ranch's use or possession of the property, "physically damage" the property, and do not involve "permanent physical occupation."

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered[.]"

The Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides:

"[N]or shall private property be taken for public use, without just compensation."

There is "no unitary test for what constitutes a 'taking' of property under either Article I, section 18, or the Fifth Amendment." *Walton v. Neskowin Regional Sanitary Authority*, 372 Or 331, 343, 550 P3d 1 (2024), *cert den*, 145 S Ct 1136 (2025). But both the Oregon Supreme Court and the United States Supreme Court have "drawn some bright lines." *Id*. The Oregon Supreme Court has "consistently found a taking when government has intentionally authorized a physical occupation of private property that substantially has interfered with the owner's rights of exclusive possession and use." *Id*. Ultimately, under Oregon's Constitution, "[m]ost cases boil th[e] definition [of a taking] down to a test of whether there has been a 'substantial' interference with property rights." *Hawkins v. City of La Grande*, 315 Or 57, 68, 843 P2d 400 (1992). The United States Supreme Court "has ruled that a permanent physical occupation of property authorized by the government is a taking." *Walton*, 372 Or at 343-44 (internal quotation marks omitted).

This case requires the consideration of a kind of *per se* physical taking recognized by the United States Supreme Court in *Cedar Point Nursery*. In that case, the Court considered whether a California regulation that granted "labor organizations a 'right to take access' to an agricultural employer's property in order to solicit support for unionization *** for up to three hours per day, 120 days per year" constituted a "*per se* physical taking under the Fifth and Fourteenth Amendments." 594 US at 143-44. The Court explained that it did; it explained that the "access regulation appropriates a right to invade the growers' property and therefore constitutes a *per se* physical taking." *Id*. at 149. More specifically, the "regulation appropriate[d] for the

enjoyment of third parties the owners' right to exclude."[10] *Id.* The right to exclude is "universally held to be a fundamental element of the property right, and is one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Id.* at 150 (internal quotation marks omitted).

Nevertheless, the Court explained that "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights." *Id.* at 160. That is, "the government does not take a property interest when it merely asserts a pre-existing limitation upon the land owner's title."[11] *Id.* (internal quotation marks omitted). Those "background limitations * * * encompass traditional common law privileges to access private property." *Id.*

Neither party asserts that the standard set forth in *Cedar Point Nursery*, which concerned the Takings Clause of the Fifth Amendment, is not also applicable under Article I, section 18, nor do we perceive of any reason why it would not be. Nor does either party develop an argument that our application of that standard should differ under the Fifth Amendment and Article I, section 18. Consequently— because neither party has developed an argument that our application of the standard set forth in *Cedar Point Nursery* should differ under the Fifth Amendment and Article I, section 18—our analysis in this opinion regarding the constitutionality of ORS 35.220(5) is the same with regard to both the Fifth Amendment and Article I, section 18.

---

[10] In some circumstances when a regulation restricted a landowner's ability to use their own property, the Court had applied the balancing test enunciated in *Penn Cent. Transp. Co. v. City of New York*, 438 US 104, 124, 98 S Ct 2646, 57 L Ed 2d 631 (1978). In *Cedar Point Nursery*, however, the Court explained that "[w]henever a regulation results in a physical appropriation of property, a *per se* taking has occurred, and *Penn Central* has no place." 594 US at 149.

[11] The Court also explained two other limitations on its holding in *Cedar Point Nursery*. First, "[i]solated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts [of trespass] rather than appropriations of a property right." 594 US at 159. Second, "the government may require property owners to cede a right of access as a condition of receiving certain benefits, without causing a taking." *Id.* at 161. Those aspects of the *Cedar Point Nursery* decision are not at issue in this appeal.

B.  *Temporary Precondemnation Entries are a Longstanding Background Restriction on Property Rights*

In light of *Cedar Point Nursery*, a central question in this case is whether temporary precondemnation entries by a condemnor are "consistent with longstanding background restrictions on property rights." We conclude that they are, at least insofar as they do not cause "physical damage" or "substantial interference" with use and possession of the property.

Oregon law has long recognized the right to precondemnation entry for purposes of "examining, locating and surveying." Section 21 of the General Laws from 1862 provided:

> "A corporation organized for the construction of any railroad, macadamized road, plank road, clay road, canal or bridge shall have the right to enter upon any land between the termini thereof, for the purpose of examining, locating and surveying the line of such road or canal or the site of such bridge, doing no unnecessary damage thereby."

The Code of Civil Procedure and Other General Statutes of Oregon, title I, § 21 (Salem 1863). And in 1881, the Oregon Supreme Court referred to the "power of the legislature to authorize an entry upon private property without compensation, for the purpose of making the preliminary examination and survey before the location of [a] road." *Oregonian R'y Co. v. Hill*, 9 Or 377, 381 (1881).

That nineteenth century Oregon authority is consistent with the law of other jurisdictions. *See, e.g.*, *Montana Co. v. St. Louis Mining & Milling Co.*, 152 US 160, 167-69, 172, 14 S Ct 506, 38 L Ed 398 (1894) (describing Massachusetts case concluding that entry for purpose of making surveys "with a view of ascertaining the boundaries of a tract of land devoted to public purposes," and with "no compensation being provided for such apparent trespass," was constitutional); *Bonaparte v. Camden & A.R. Co.*, 3 F Cas 821 (CCDNJ 1830) ("An entry on private property for the sole purpose of making the necessary explorations for location, is not taking it, the right remains in the owner as fully as before; no permanent injury can be sustained, nothing is

taken from him, nothing is given to the company."). Indeed, "statutes authorizing entry to conduct surveys are as old as the republic itself." *Summit Carbon Sols., LLC v. Kasischke*, 14 NW3d 119, 128 (Iowa 2024), *as amended* (Jan 27, 2025) (citing Bethany R. Berger, *Property and the Right to Enter*, 80 Wash & Lee L Rev 71, 101 n 187 (2023) (observing Pennsylvania's survey entry law was first enacted in 1782)).

　　In 1883, Thomas Cooley's treatise on constitutional law summarized the then prevailing understanding of property rights with regard to precondemnation entries:

> "No constitutional principle, however, is violated by a statute which allows private property to be entered upon and temporarily occupied for the purpose of a survey and other incipient proceedings, with a view to judging and determining whether or not the public needs require the appropriation, and, if they do, what the proper location shall be; and the party acting under this statutory authority would neither be bound to make compensation for the temporary possession, nor be liable to action of trespass."

Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 694 (5th ed 1883); *accord SCS Carbon Transp. LLC v. Malloy, Tr. of Harry L. Malloy Tr. No. 2 Dated May 25, 2008*, 7 NW3d 268, 278 (ND 2024), *as amended* (Jan 9, 2025) (relying on same treatise to describe the "prevailing understanding of property rights at the time of [North Dakota] statehood"); *Summit Carbon Sols.*, 14 NW3d at 129 (relying on an earlier edition of this "famous constitutional treatise" for this same "principle").

　　As the Supreme Court of Iowa recently recognized, "[t]hroughout the 1800s, courts across the country routinely held that entry onto private property for the purpose of conducting a survey was not a taking." *Summit Carbon Sols.*, 14 NW3d at 128. And "[t]hroughout the twentieth century, technological advances led to surveys for new purposes, such as finding appropriate routes for electrical power lines." *Id.* at 129. Today, "all fifty states have statutes authorizing entry to private property for the purpose of conducting preliminary land surveys in exercising eminent domain." *Id.*; *see Palmer v. Atlantic Coast Pipeline, LLC*, 293 Va 573, 582,

582 n 2, 801 SE2d 414 (2017) (citing statutes from all 50 states, including ORS 35.220, "codify[ing] the common law privilege of a body exercising eminent domain authority to enter private property to conduct preliminary surveys without trespass liability").

Ultimately, like the Iowa Supreme Court, we "do not read *Cedar Point Nursery* as upending centuries of survey-access laws in all fifty states," nor has any other court of which we are aware. *Id.*

The historical principle underlying the right to pre-condemnation entry is that "'[t]he right of eminent domain is virtually useless to an entity without the right to survey, and that right must be available before the beginning of condemnation proceedings.'" *Root v. Kamo Elec. Co-op., Inc.*, 699 P2d 1083, 1090-91 (Okla 1985) (quoting *State ex rel. Rhodes v. Crouch*, 621 SW2d 47, 48 (Mo 1981)). The pre-condemnation right of entry enables "the prospective condemnor to determine whether the public needs require that the property or a part thereof be taken, and, if so, what the proper location of the project should be with respect to the property, and thus to facilitate an intelligent, economical condemnation proceeding." *Oglethorpe Power Corp. v. Goss*, 253 Ga 644, 645, 322 SE2d 887, 889 (1984) (internal quotation marks and brackets omitted).

But we also understand—and Idaho Power does not dispute—that certain temporary precondemnation entries may constitute "takings" for which compensation is required under Article I, section 18, or the Fifth Amendment; the mere fact that a precondemnation entry is necessary does not mean a condemnor has legal *carte blanche* with respect to activities on a private property. Where such temporary precondemnation entries constitute a "substantial interference" with use or possession of property, or "physically damages" property a "taking" may have occurred. *See Hawkins*, 315 Or at 68 (1992) ("Most cases boil th[e] definition [of a taking] down to a test of whether there has been a 'substantial' interference with property rights."); *see also SCS Carbon Transp. LLC*, 7 NW3d at 278 ("Because survey access is a longstanding background restriction, Landowners cannot demonstrate that they have a constitutionally protected

interest in excluding *limited*, *innocuous intrusion* by pre-condemnation surveyors." (Emphasis added.)); *Kane County v. Elmhurst Nat. Bank*, 111 Ill App 3d 292, 298, 443 NE2d 1149, 1153 (1982) ("A taking may not be allowed under the guise of a preliminary survey; the right of entry does not include the right to make permanent appropriation or cause more than minimal or incidental damage to property; and the entering party is free of liability only to the extent that the entry or occupation is temporary, or the infliction of damage is incidental and incipient or preliminary." (Internal quotation marks omitted.)). But in such circumstance, a property owner is entitled to compensation under ORS 35.220(3). *Id.* (property owner may recover either before or after precondemnation entry for "[*a*]*ny* physical damage caused to the property by the entry upon or examination, survey, testing or sampling of the property," or "[*a*]*ny* substantial interference with the property's possession or use caused by the entry upon or examination, survey, testing or sampling of the property" (emphases added)); *see also* ORS 35.220(5) (providing that nothing in ORS 35.220 "affects *any* liability under *any* other provision of law that a condemner may have to an owner or occupant of property by reason of entry upon or examination, survey, testing or sampling of property" (emphases added)).

C.  *The Trial Court Erred in Concluding that ORS 35.220 is Unconstitutional*

We turn back to the issues in this case: Whether the trial court erred in concluding that the temporary precondemnation entries that Idaho Power sought were *per se* physical "takings" under Article I, section 18, and the Fifth Amendment, for which 516 Ranch was due "just compensation," because they were not consistent with 516 Ranch's "right to exclude," and were not consistent with "longstanding background restrictions on property rights" or "traditional common law privileges to access private property." And, as a consequence, whether the trial court erred in concluding that ORS 35.220 was unconstitutional because it allowed "a condemner to enter onto one's property to conduct examinations, surveys, tests, and samples of the property without the consent of the owner and without just compensation."

We conclude that the trial court erred. The trial court reached the conclusion that it did regarding the constitutionality of ORS 35.220, although it also determined that 516 Ranch had not proven that the precondemnation entries at issue in this case would "physically damage" 516 Ranch's property, "substantially interfere" with 516 Ranch's use or possession of its property, and that the entries did not involve "a permanent physical occupation" of 516 Ranch's property. Because we understand such temporary precondemnation entries to be privileged at common law, ORS 35.220, which allows such entries without compensation, passes constitutional muster as applied in this case.

In concluding that the trial court erred, we recognize that the type of precondemnation entries at issue in this case—which 516 Ranch characterizes as "studies of birds, plants, animals, noxious weeds, wetlands, cultural resources and geotechnical drilling over as many as thirty-two visits"—function to evaluate different subject matter than that that might have been evaluated by condemnor precondemnation at common law. Nevertheless, the historical principle underlying the right to precondemnation entry remains just as salient. Then, as now, the precondemnation right of entry enables "the prospective condemnor to determine whether the public needs require that the property or a part thereof be taken, and, if so, what the proper location of the project should be with respect to the property," facilitating an "intelligent, economical condemnation proceeding." *Oglethorpe Power Corp.*, 253 Ga at 645. That is, modern circumstances may require evaluation of different subject matter, but the historical principles underpinning the right to precondemnation entry are no less applicable. *Coast Range Conifers v. Board of Forestry*, 339 Or 136, 142, 117 P3d 990 (2005) ("Our goal in [understanding the meaning of Article I, section 18], is to identify the historical principles embodied in the constitutional text and to apply those principles faithfully to modern circumstances.").

We emphasize that our analysis of whether the entries at issue in this case constitute "takings" for which compensation is required is limited by the trial court's determinations that Idaho Power does not seek "a permanent physical

occupation" of 516 Ranch's property, and that 516 Ranch had not proven "substantial interference" with the property's use or possession or how the property would be "physically damaged" by the entries. As a result, this appeal presents no opportunity to consider, for example, whether the precondemnation activities proposed by Idaho Power might constitute a taking for which compensation is required for those reasons. *See Kane County*, 111 Ill App 3d at 299 (order "authorizing soil borings and a geologic study without the landowners' consent or a prior condemnation proceeding would be invalid even if statutorily authorized" because "[s]uch drilling and excavation, even where subsequent backfilling has been required, has been properly recognized as a substantial interference with the landowners' property rights rather than a minimally intrusive preliminary survey causing only incidental damage"); *see also Strom*, 11 NW3d at 93 ("[I]nvasive geotech and deep-dig surveys" were takings, insofar as the "deep-dig" surveys will involve "the use of heavy equipment and substantial disturbance of the Landowners' property" and with regard to "geotech surveys, the resulting holes will be filled with 'drill cuttings or with a cement/bentonite grout mixture' resulting in a permanent physical occupation of a portion of Landowners' property, which undeniably constitutes a taking.").[12] We express no opinion on that issue.

Finally, in concluding that ORS 35.220 passes constitutional muster as applied in this case, we highlight that the trial court can set "reasonable terms and conditions for entry and for any examination, survey, testing or sampling of the property." ORS 35.220(2). Those terms and conditions can operate to ensure the precondemnation entries Idaho Power engages in are conducted in a reasonable manner, to minimize interference with 516 Ranch's property rights and mitigate the risk of damage associated with Idaho Power's precondemnation entries.[13]

---

[12] Indeed, on appeal, 516 Ranch highlights testimony that the damage caused by the entries is "hard to figure, but it's not nothing." If such damage is proven, 516 Ranch is entitled to compensation under ORS 35.220.

[13] By way of example concerning the types of "reasonable terms and conditions" a court can order under ORS 35.220(2), we note that, regarding entry for the "land surveys" and "appraisal field visit," the trial court ordered, among other terms and conditions, that:

Ultimately, we conclude that the trial erred in concluding that ORS 35.220 was unconstitutional because it "allows a condemner to enter onto one's property to conduct examinations, surveys, tests, and samples of the property without the consent of the owner and without just compensation." As set forth above, not all precondemnation entries are takings under Article I, section 18, or the Fifth Amendment. That is, although the right to exclude undoubtedly is "a fundamental element of the property right," as explained in *Cedar Point*, the government "does not take a property interest when it merely asserts a pre-existing limitation upon the land owner's title." 594 US at 158, 160 (internal quotation marks omitted). And where a taking has occurred—because property is physically damaged or a landowners' possession and use is "substantially interfered" with—ORS 35.220 provides a property owner with the right to recover compensation either before or after entry.

Reversed and remanded.

---

"Petitioner shall provide at least 48 hours' notice prior to entry via phone call and text message and such notice should provide the full name of the contact person, approximately how many people will be entering 516 Ranch's property, for what purpose, and a description of what vehicles will be entering 516 Ranch's property;

"Petitioner shall leave gates in the condition in which they are found and Petitioner shall not share any gate lock combinations with third parties beyond its own agents;

"Petitioner shall engage in noxious weed mitigation measures; [and]

"Petitioner's entry shall be limited to the project site boundary for the Morgan Lake Alternate route and access roads for that route."